Good morning, Your Honors. Paul Hoffman of Hoffman & Schweitzer representing Lucius Brown in this matter. May it please the Court. This motion for summary judgment was decided by Judge Hall in which she found, based on her reading of how the Jones Act should be applied, that there were no facts that could support a conclusion of negligence or unseaworthiness. Her decision completely contradicts the evidence that was adduced. We proved through photographs that were taken by the captain of the vessel that there was a wet deck where Mr. Brown fell. We proved through the evidence of the same photographs that there was some ice in the same spot. Counsel, aren't you bound by the deposition testimony of Mr. Brown who said he had no idea why he fell? That is not what he said, Your Honor. All right. Well, Mr. Brown said he — first of all, there's a lot of evidence about what happened. He was at the railing and he turned and took two steps and both feet slipped out. It was very slippery, he says. He says that he fell in a position, and that is shown in the photograph that A656 of the record. Let me cut to this, because I am inclined to agree with you that even though his testimony contradicted much of what the earlier deposition was, there is enough separate testimony so that if we cut him out altogether, there is enough separate testimony at least for unseaworthiness, which is a nonfault thing. My problem goes to the primary duty issue, which is a terrible problem because we have this opinion by Learned Hand and an opinion by Harlan, and then you have this opinion by Clark saying it ain't there. And it — my question is, what do we do with this doctrine and whether it applies in this particular case where there could be some evidence, despite what he said, that it wasn't his primary duty? I mean, that — that is the — for me, the problem in this case. Thank you, Judge. I — it was an issue that was not decided by Judge Hall. No, because Judge Hall went on the notion that there was no unseaworthiness, where, frankly, having been on the Supreme Court as a clerk in 1958 when this issue about Jones Act and FELA was really decided, I — I know what that's about. Right. And I didn't mean to dodge your question. We did argue it, and I do believe, first of all, that the primary duty doctrine should be jettisoned, but — because the FELA — I do, too, but that doesn't mean I'm not about it. That's right. The FELA certainly talks about contributory negligence is not a defense, and primary duty might go to the duty — The issue isn't contributory negligence because, if we're talking unseaworthiness, unseaworthiness is a non-fault cause of action, so it's not a matter of negligence anyway. The question is assumption of risk. Of course, which is also — And what Justice Harlan — Judge Harlan then said, you can have express assumption of risk despite the fact that Congress said there is no assumption of risk. If I may say so, sir, I agree with you, and we did brief it, but I think in this case we don't have to reach that because there were other entities that we believe were at fault here that had duties that also were breached. It would only go into the mix. For instance, the condition of the deck being — having the nonskid very worn after three years of service, which was in violation, we contend, of Reinhauer's own rules about maintenance. There's that evidence, which it was not Mr. Brown's duty. It was Reinhauer's duty to prepare that deck. We also — and just — the other thing is the mate, Mr. Osmond, if it was ice that he slipped on, and again, we believe we have negligence and unseaworthiness, and we showed that the only two possibilities of what caused Mr. Brown to fall was either a wet deck on a worn surface or that he slipped on ice. As to the ice, Mr. Osmond — It looks like from the photograph there are some dry areas as well. He said he didn't know what it was. He didn't see it, and he didn't feel it. Judge, if you look at the photograph at A656, you can see that that deck is either wet or covered with ice. Mr. Brown, in one of the — in his deposition, put a stick figure on that very photograph, and — The next page has some areas that are dry as well. So, like, he said he didn't know. And so how are we to know now what caused it? Because he says, I slipped in this area where he drew his stick figure, and you can see from the photograph that it's wet or there's some ice in that area. So there's the extrinsic evidence that shows there was a condition to the deck. And he says his feet slipped out on that deck. Of course, in his affirmation, he again repeats, I'm not sure if I slipped on ice or water. I believe it was a wet deck that I slipped on. But he does say — he does say, this is the area where I slipped, and I see it in the photograph. So he's referring to extrinsic evidence. Are you arguing that his deposition testimony and his averment are not contradictory? Absolutely, Your Honor. In his affirmation, he specifically says, I'm not sure what I slipped on, but I know I slipped here, and I know the deck was wet, as can be seen in the extrinsic evidence, which is one of the standards that even Judge Hall cited, that if there's extrinsic evidence, you can put in a different story as to what occurred, because he now reviews those photographs which show, as I said, either a wet deck or the wet deck or ice. Was he shown the photographs in his deposition? I'm sorry, sir? Was he shown the photographs in his deposition? After he originally testified, then Mr. Zangetti brought them out and showed it to him. And that's when he drew the stick figure as to where he fell. Is that a yes or no? I'm not understanding your answer. During the deposition, was he shown the pictures as exhibits? After he originally testified as to whether — what he slipped on, he was then presented with, for instance, this photograph — Oh, so you mean after, in the deposition? During the deposition, after he said, I'm not sure what I slipped on, okay, he was then shown this photograph, and then he drew the stick figure on this photograph saying, here's where I slipped and fell. And that is right in the middle of the wet deck. But he didn't — go on. But he didn't say in the deposition the things in the affidavit were — No, he wasn't asked. — more specific in his memory. He was not asked. A lot of what is in his affirmation, he was not asked, for instance, about the condition — But he had the opportunity to recall those things. In his affirmation, he does. He was not asked, what was the condition of the deck paint? It's not his job to ask the questions in a deposition. His job is to answer the questions that are asked. And they was never asked, what was the — what was the condition of the deck? Much of what he says is not worth paying — sorry. I'm sorry. This just went off. Okay. Much of what he says isn't worth paying attention because it contradicts. The question is, is there sufficient other evidence apart from what he said to make out a case? And ignoring what he says because — but is there enough in the context of a situation where the Supreme Court has said that causation in these cases, and said it just a couple of years ago, is a trivial showing, which is very different from what causation is normally. But causation in Jones Act and FELA cases under the Supreme Court is a very minor showing. Judge, I fully agree with that. And certainly, this Court's decision in Martinez v. City of New York, in fact, highlighted that fact that in a Jones Act case where there was a slip and fall, and that plaintiff did not know exactly where he fell, but there was extrinsic evidence that there was oil on the stairs that he slipped on. And you sent it back to the Court for a trial. Similarly, in the Esposito case from Judge Nathan, where he found, again, where a plaintiff said, I'm not sure what I slipped on. I slipped on this plate. I know that there was some sand on it. I I'm not sure what I slipped on. But Judge Nathan said, this is a jury question. And I think you should do so based at least on your Martinez decision where you sent it back. Thank you. You've reserved two minutes for rebuttal. Thank you. We'll hear from Reinhauer. May it please the Court, my name is, and counsel, my name is Gino Zangetti. I'm the attorney for Reinhauer Transportation Company in this case. Your Honors, this case I would submit to the Court, even within the jurisprudence of the Jones Act, is somewhat unique. The plaintiff in this case testified at fair length about his accident, and was asked very specific questions about the cause of his accident. And his response to whether he could feel, whether he could see, and ultimately whether he knew what caused him to fall were all negative. And at the end of this line of questioning, his response was, I don't know. There's no question that if we take his evidence as the only evidence he loses. The question is, if we ignore his evidence, because it is contradictory, both to what he says later and so on. Which may well make a jury, if it gets to a jury, not believe anything. But if there is enough other evidence of unseaworthiness, let's leave aside negligence, but unseaworthiness, which is a non-negligent fault. That is, for instance, that the paint was in bad shape three years, three to six years, and ten months later you get testimony that it was not bad. Is that enough? The fact that this was a 16-inch snowfall that nobody could deal with. Again, this doesn't go to negligence, but to create a question of unseaworthiness, where causation is so slight. Now, my problem with that brings me back to the primary duty rule. I understand, Your Honor, in just a couple of responses to that. The causation element of an unseaworthiness cause of action, as opposed to a Jones Act or an FELA cause of action, is quite different. The unseaworthiness cause of action incorporates the traditional common law causation, proximate causation test. Where do you say that? Where do you get that? Your Honor, I believe it. I'm sure we briefed it, but I can certainly— Unseaworthiness is incorporated in the Jones Act, and I believe that the Supreme Court's holdings with respect to causation apply to everything, even, if anything, even more to unseaworthiness, but— Your Honor, I respectfully disagree with the Court, and I understand the confusion, but seaworthiness is a general maritime law cause of action, and the causation—the causation standard in an unseaworthiness case is the traditional proximate cause. The unseaworthy condition has to be a substantial factor in causing the action. There are ample cases on that. And to put it in better perspective, the slight cause standard from the Jones Act is taken from the FELA. The FELA was adopted in whole into the Jones Act. The FELA states that an accident or the negligence of a party is—may be—the defendant may be held responsible if it is a cause, a cause. And that's where this slight standard comes from. In fact, that's the only difference between a Jones Act case and a traditional common-law negligence case. So respectfully, I submit to the Court that the standard's different. Even if we look at—and I understand the Court's concern about, you know, particularly under the FELA and the Jones Act, that they speak to a liberal standard or remedial act. However, this case is really unique in the following respect. You can look at all these cases and see that language in these cases, but I've not found a case where a plaintiff has testified that he simply doesn't know what caused his accident. And even under the liberal jurisprudence of the Jones Act, even under the liberal jurisprudence of the FELA, there are very, very substantial case law that says you can't—we can't allow a verdict to stand on speculation or conjecture. The Jones Act incorporates the common-law negligence principles, most especially common-law negligence principles of the State of New York. And I've cited a Second Circuit case which states that. In fact, I was lucky enough to get a prior summary judgment case upheld by this Court, the Kennedy v. Adamo case, different facts. But the Courts will and have upheld summary judgment Jones Act cases where we have this type of speculation supporting a claim. I think one thing, to say we would ignore the plaintiff's testimony, one fact needs to be looked at. What we then would rely upon is essentially circumstantial evidence, photographs and so on. I mean, what we have, and this is what I'd like you to focus on, I mean, do we have to be bound in a case like this by his own testimony which destroys his case, which he then counters, or do we look to the extrinsic evidence apart from that, which if we completely ignore this guy's testimony, is that enough to show for Jones Act and for unseaworthiness, either negligence, which is much more doubtful, or strict liability under unseaworthiness, just ignoring him? But what there is on the rest, is that enough so that a jury under the standards of those could find unseaworthiness and causation? That's the first thing. And if we do, is that countered by the primary duty rule? Your Honor, I will certainly answer your question directly. I want to point out one thing before that, though. Before we get to the circumstantial evidence, I submit to the Court that we questioned the plaintiff at the deposition about the circumstantial evidence, and he was certainly the person in the best position to so so. No, I understand that. But just one point, Your Honor. Evidence to the contrary, that ultimately becomes a jury question. Right. And the fact that this guy has done everything he possibly can to undercut his case doesn't mean that there isn't a case if there is evidence to the contrary. I understand. So my question is, is there evidence to the contrary? I'll deal with that. I just want to point out one thing. I asked him specifically, after you fell, did you see what you slipped on? Now, that would be classic circumstantial evidence, particularly in a trip and fall or a slip and fall case. Many witnesses are unable to say exactly what caused them to fall until they fall and they see the bolt, they see the raised step, what have you. He said no. So based on the circumstantial evidence available to the plaintiff, he was unable to say what caused him to fall. Next step, looking at the pictures, looking at the other evidence. The pictures, as Your Honor pointed out, and in the appendix, page 658, and so forth, and page 656, they show a deck that has dry areas. It has merely wet areas with minor amounts of water. They have patches of snow, which the appellant in his ---- What's the condition of the nonskid paint in that area? The condition of the nonskid paint in that area, and it's shown in other photographs, is very good. In fact, the plaintiff's expert, Christopher Barry, who took the slip meter to the deck, found that it met every standard he applied to it. The condition of the nonskid was excellent, and it could be ---- it's shown in some of the other photographs where you see dimples on the nonskid. But this sort of highlights one of the problems with this case, why we're left, based on the speculative ---- How do you deal with the fact that the paint, the nonskid paint, was said to last between up to three years, up to six years, and you have evidence 10 months later, but still well within the six years and so closer to the three years, that it was in bad shape? That is evidence of unseaworthiness, not necessarily of negligence. But isn't that evidence of unseaworthiness? And isn't that evidence on which a jury could find, this is why this person fell if he didn't fall because of the ice, because that's what that paint was there to keep him from falling. So on an unseaworthy Jones Act, why isn't that enough? Which, again, brings me back to the question of was it his duty to see to it that that was in good shape? But why, if we leave everything else out and just have that and look at it as a standard unseaworthiness case, that isn't enough? The evidence about the condition of the nonskid paint when it was viewed 10 months after the accident comes exclusively from the plaintiff's expert. We don't know that. Exclusively from the plaintiff's expert, but when you look at the tests he performed, he took a meter and he dragged it along the surface, and every time he did it, it met OSHA standards, it met every standard he tested it against. So there really is no evidence it was in bad shape. But it really brings to light the problems with the case. Can I just finish with you? Are you saying that the expert should not be believed? He shouldn't testify. We moved to exclude him, and the Court never got to that. The Court never got to that. But the expert on that point should be believed, because all of his findings were that the deck met the applicable standards according to him. But it points out, Your Honor, that, you know, given these different possibilities, if there was ice on the deck and if the plaintiff knew how he fell, then nonskid would be meaningless because ice would cover the deck. If there was snow and the plaintiff testified that he slipped on snow, then nonskid would be meaningless. If he could have fallen for one of three reasons, and each one of the three reasons, water, snow, or bad paint, are sufficient to be unseaworthy, then it doesn't matter that he cannot tell us which of the three it is, because all he has to do is to show unseaworthiness caused. That makes it a guess. That cannot be the answer. That makes it a guessing game, Your Honor. And that's not what these cases stand for. And there's a fourth possibility, which is the dry deck, the perfectly dry deck. There is a possibility. Right? So then we get to what we – and this was dealt with in this Prez-Bolinski case out of the Sixth Circuit. It's the closest case of any case that I've found. It's an FELA case where the plaintiff came in and said, I tripped on the bridge, on the railroad bridge, and one of three possibilities. The plaintiff in our case doesn't even give us a possibility. He says, I don't know. So we're – he's behind the eight ball in that case to begin with. And the Court looks at it and says, that's not good enough, because a scintilla of evidence doesn't withstand summary judgment. And when you give us possibilities, that's what we're talking about. A scintilla of evidence of negligence does not suffice. But very little evidence of negligence does. On causation, at least on the negligence thing, a scintilla of evidence, the Supreme Court has told us, suffices. And that's what Judge Hall based her decision on. She based it upon the negligence. She didn't deal with causation. She said the evidence submitted to the Court does not give rise to a prima facie case of either negligence or unseaworthiness. I see my time has expired. If there are any questions, I'm happy to answer them. And I thank the Court for its time. Thank you, counsel. Just in quick rebuttal, Judges, Judge Park, you – just getting back to the photograph at 656, at 845 of the record, you see where Mr. Brown drew his stick figure. And just to deal with the issue, was it wet or where he slipped, remember, his testimony at his deposition was he took two steps from the rail. If you look at 656, you can see that the two steps would put his feet absolutely in the wet area. Oh, I'm sorry, Your Honor. If he had taken two steps, you can see from 650 – the photo at 656 that his feet would have definitely been in either the wet or the icy area. Why didn't he say that when he was asked? He did. He drew – at the page I just cited to you, Your Honor, at 845, he drew the stick figure of where he was. And he did testify at his deposition that he took two steps and both feet went out. That's at his deposition. That's not in his affirmation. That's his deposition, and that both feet went out. I just want to reach a couple points that Mr. Zanghetti said. I dispute that there are no cases that are similar to this. In my brief, we point out the Martinez case from the Second Circuit, the Esposito case, that we have the Supreme Court case of Lavender v. Kern from 1945, which was a death case, so the decedent couldn't give a story. It had to be decided on the extrinsic evidence, just as Judge Calgrace has been talking about. And also the Wirtz case, which came out of the Minnesota appellate case, which, again, this is a gentleman who was a FELA, he slipped and fell and injured himself. He said, I'm not sure what it was, but the Court reversed the summary judgment against him because there was extrinsic evidence of the area where he was presented slippery conditions. Judge, you mentioned causation. What is the causation standard in Jones Act v. Unseaworthiness? It is my opinion that the Supreme Court in Miles, which said that where Congress has and a General Maritime Law case and a Jones Act case, Miles is, in my opinion, saying to these courts, and it's not been raised before, that the standard for causation in an unseaworthiness case where a Jones Act seaman should be the same as under the Jones Act. I think everything that you raised and that Mr. Zangetti raised says there's multiple questions of fact here. Was the deck unseaworthy because of the deck paint? Was the deck wet where he slipped, or was there ice? There's no question it was either water or ice on the deck. That comes from Mr. Marshall, the captain of the tug who took the photographs, and he opined in his testimony that the evidence you say is that he could have slipped because of water, he could have slipped because of ice, he could have slipped because of bad paint or any combination thereof. Yes, sir. It does not say that he did slip because of those. He might have slipped because God made him slip. Well, that's also always a possibility. Yeah, and I think that The question is, is there enough so that a jury could, under the standards of causation for the Jones Act and for unseaworthiness, find that he slipped because of one of these things, which might be, I'm not saying they are, deemed unseaworthy, and then the question is, was it his responsibility to see to it that the ship was not unseaworthy? That's where I come back to what is still my primary problem. My last comment on that, Judge, it comes from what Judge Nathan did in Esposito, distinguishing the Przybylinski case that counsel just cited to the court. In Przybylinski, there were three possibilities as to why that woman slipped and fell. She was an FELA worker. And in Przybylinski, the court said you had to prove that each one of those conditions, because it was a general verdict of negligence, that each one of the conditions could have been negligence. The court said only two would be negligence. The third one, we don't know what the jury did, so it was sent back. And Judge Nathan in Esposito said both of the conditions alleged by the plaintiff where he slipped and fell, because that plaintiff didn't know, again, just like here, he didn't know exactly what caused his fall, but Judge Nathan said both of the conditions that he alleged could have been negligence for the jury to decide. With that, Your Honors, thank you very much for listening. I must apologize to both of you, because I was clerking on the Supreme Court in 1958 when this issue of FELA and Jones Act was the fight between Justice Frankfurter and Justice Black and how that came out. And I've been teaching those cases for 60 years since, which is a disadvantage, because a judge should not know too much. Thank you both for reserved decision. Thank you very much.